GEORGE HORRIDGE, Appellant, v. F. C. NICHOLS et al., Appellees.

FRAUD:   Actions—Trial—Jury Questions on Undisputed Testimony.
1  The *credibility* of testimony tending to show fraudulent representa-
   tions in the procurement of a nonnegotiable promissory note, and
   the issues of *scienter* and *reliance* arising thereon, may require
   submission to the jury, even though the testimony tending to show
   the making of the representations and the falsity thereof stands
   *undisputed.*

TRIAL:   Directed Verdict—Premature Motion.   A motion for a directed
2  verdict, made *before the adverse party has rested,* is premature, and
   a ruling sustaining the same   under such circumstances is quite
   unallowable.

BILLS AND NOTES:   Actions—Fraud in re Nonnegotiable Note.   The
3  holder of a *nonnegotiable* promissory note has the right, of course,
   to negative defendant's plea of fraud in the inception of the note.

*Appeal from Benton District Court.*—JAMES W. WILLETT,
Judge.

SEPTEMBER 19, 1922.

SUIT upon a promissory note, brought by a transferee there-
of.   The defendant pleaded fraud in the inception of the note.
To this defense, the plaintiff replied with a general denial and a
plea of estoppel.   At the close of defendant's evidence, the trial
court dircted a verdict for the defendant, and the plaintiff ap-
peals.—*Reversed.*

*Tobin, Tobin & Tobin,* for appellant.

*Edwards, Longley, Ransier & Harris* and *Kirkland & White,*
for appellees.

EVANS, J.—The note sued upon was for $2,000, dated
February 1, 1916, and payable 5 years from date, with 5 per
cent interest.   Assuming the note to be negotiable, the plaintiff

1. FRAUD: actions: trial: jury questions on undisputed testimony. was a holder in due course for the full value, and without notice. The note, however, contained a clause which rendered it nonnegotiable, under our holding in *Cedar Rapids Nat. Bank v. Weber*, 180 Iowa 966. The note was given by the defendant F. C. Nichols to one Fry, pursuant to a contract of exchange of real estate, whereby Nichols conveyed to Fry his equity in certain Colorado land, and whereby Fry conveyed to Nichols his equity in certain city property in the city of Waterloo, Iowa. The fraud pleaded by the defendant was that Fry had falsely represented the value of the Waterloo property, and that Nichols had been deceived thereby. Upon the trial in the district court, the plaintiff introduced his note, and proved that he was the owner thereof, and that it was wholly unpaid, and rested. The defendant thereupon introduced evidence in support of his defense of fraudulent representation. He testified to the representations of value made by Fry. He also introduced evidence that the value of the property was much less than that represented by Fry, and rested. At the close of the evidence of the defendant, the plaintiff moved for a directed verdict. At the same time the defendant moved for a directed verdict. The motion of the plaintiff was grounded on the theory that his note was negotiable, and that he was, without dispute, a holder in due course, if the note was negotiable. The motion of the defendant was grounded upon the theory that his evidence was undisputed and that, therefore, he was entitled to a verdict finding fraud, and that his defense was available to him as against the plaintiff, because the instrument was not negotiable. The court overruled the motion of the plaintiff, and sustained the motion of the defendant. The complaint of plaintiff, as appellant on this appeal, is not of the adverse ruling upon his motion to direct, but of the adverse ruling of the court in sustaining the motion of the defendant.

Disregarding, for the moment, other incidents of the hearing, to be stated later, it was erroneous to sustain the defendant's motion. The fact that the evidence of the defendant as to representations and their alleged falsity was undisputed, did not of itself entitle him, as a matter of law, to a finding of fraud. The credibility and weight of his evidence were for the consid-

eration of the jury; likewise, the question of *scienter* on the part of Fry and of *reliance* on the representations on the part of the defendant. His own testimony disclosed that he examined the property and made independent inquiry concerning same; that the negotiations between him and Fry were pending for two months thereafter; that, under his instructions, his banker made an investigation of the values of the Waterloo property, and reported to him a valuation much less than that represented by Fry; and that this was done before his negotiations were closed. Assuming it to be true that he had sufficient evidence to go to the jury, it was by no means obligatory upon the jury to find actionable fraud in his favor. No representations were shown except as to value, and these purported to be only a matter of opinion.

To proceed a little further into the details of the trial, the motions for a directed verdict were made upon the suggestion of the court. Except for this, the trial had not reached a stage where a motion by the defendant could have been deemed appropriate. It is appropriate that a party present a motion for a directed verdict after the other party has rested. It is not appropriate that he should present such a motion after he himself has rested, and before the other party has rested. The defendant's motion was presented at the close of his own evidence, and before the plaintiff had rested or had waived his right of rebuttal. The record discloses the following colloquy, pending hearing on the motion:

2. TRIAL: directed verdict: premature motion.

"M. J. Tobin: It is the purpose of the plaintiff in this case to rebut any and all of the testimony that has been introduced and offered here by the defendants in this case, and at this time, in the event that the plaintiff's motion is overruled, he wants it to be understood that he reserves his right to introduce testimony on the question of fraud.

"The Court: What will you do with the defendant's motion?

"M. J. Tobin: Well, I haven't anything to do with that; that is up to you.

"The Court: Well, the court will then dispose of that proposition.

"Mr. Longley: I might say that these motions were made after the court announced that we rested. I don't know whether counsel said he rested or not.

"M. J. Tobin: Why, certainly counsel did not say he rested, and counsel intends to introduce testimony here.

"The Court: Well, the plaintiff won't introduce testimony here till these motions are made in the deliberations and they are both presented to the court.

"M. J. Tobin: You at least won't make any objection to counsel making his position known?

"The Court: Counsel can make his position known and make his record; but there are two motions here, and the court will consider them both before we proceed further.

"M. J. Tobin: Yes, that is my idea; you misunderstood me.

"The Court: Yes.

"M. J. Tobin: Then the court understands me. My idea has been that, if the plaintiff's motion is overruled when made, at the close of the defendant's testimony, that he will offer testimony in rebuttal of the question of fraud and of the testimony introduced by the defendants as a defensive matter in this case. That is what I meant to say.

"The Court: The court will announce now that you will not be given that opportunity, then, though your motion will be overruled. (Plaintiff excepts.)

"M. J. Tobin: Why?

"The Court: Why,—because there is another motion here on the part of the defendants for a directed verdict, which follows of necessity here.

"M. J. Tobin: Yes. Do you mean to say that the plaintiff will not be permitted to produce testimony on the question of fraud and the other elements that go to make up the defenses?

"The Court: Not if there is an adverse ruling on the plaintiff's motion. (Plaintiff excepts.)

"M. J. Tobin: Well, I just wanted to know, so that I would at least be in the possession of my rights.

"The Court: Yes,—well, you are in the possession of your rights.

"M. J. Tobin: I know I am.

"Mr. Longley: Well, that is the end of the case.

"The Court: There is, except it is a matter of recoupment of the amount of the principal and interest of this note.

"Mr. Longley: If it please your honor, the evidence is undisputed that Mr. Nichols' property was worth $4,000.

"M. J. Tobin: We haven't had a chance to show, and haven't had a chance to dispute it, and we are asking for rebuttal so as to dispute it, and show there was no fraud.

"Mr. Longley: I am talking about the case as it stands; not the one that you might have pleaded or might have tried.

"M. J. Tobin: We are trying it now.

"The Court: The motions, divers and sundry, all and singular, made by the plaintiff, and each ground thereof and statement in connection therewith, in every detail, are now overruled, and the plaintiff excepts. The motion of the defendants for a directed verdict is sustained, and a verdict will be directed accordingly, and the plaintiff excepts.

"M. J. Tobin: Before the direction of the verdict by the court, the plaintiff in this cause now offers to prove in rebuttal that there was no fraud; that the property in Waterloo was equivalent in value to that in which it was taken over in the exchange and trade; that the property in Colorado was not worth any more than that in which it was taken over in the barter and the exchange and the trade.

"The Court: Well, perhaps that may be done; but if it can be done, as a question of practice, I will have to learn it.

"M. J. Tobin: Well, you at least don't refuse to give me the opportunity of offering to do so?

"The Court: Certainly, and the offer is now refused, and the ruling is adhered to. And when we get through making this record, I want to have this verdict prepared."

The foregoing discloses fully the theory upon which the case was disposed of. This was that, unless the plaintiff was a holder in due course of a note negotiable in form, no defense against the charge of fraud was available to him.

3. BILLS AND
NOTES: actions:   The plaintiff's reply denied the fraud of Fry.
fraud *in re*
nonnegotiable    Clearly, plaintiff had a right to negative the
note.            evidence of the defendant in that regard. We

must hold, therefore, that the defendant's motion to direct a

verdict should have been overruled. The judgment below is, accordingly,—*Reversed.*

Stevens, C. J., Arthur and Faville, JJ., concur.