CHARLES I. BROCK *v.* RALPH ROBINSON.

*William H. Sleeper, Robert Shaw* and *Wayne J. Mullavey* (*Mr. Mullavey* orally), for the plaintiff.

*Devine & Millimet* (*Mr. Millimet* orally), for the defendant.

KENISON, J.   While common courtesy may demand that operators of motor vehicles approaching in opposite directions should dim their headlights, the statute law of this state does not require it. See House Bill No. 156, 1949 House Journal 308; 1949 Senate Journal 195.   "One of the familiar hazards of night driving is the blinding effect produced by the headlights of approaching motor vehicles. While it has been recognized that no practicable device has been found which permits sufficient illumination of the road ahead while entirely doing away with any glare or dazzling effect upon other drivers, the situation has been met to some extent by equipping cars with devices which, while still giving considerable illumination ahead, permit the beam of the headlights to be dimmed or deflected to some extent upon meeting another vehicle.   The duty to have motor vehicles equipped with, and to use, such devices has been imposed by statute in most jurisdictions, and it may be that ordinary care at common law imposes the same duty even in the absence of statute."   Anno. 22 A. L. R. (2d) 427, 429.

Where there is evidence in the case showing a causal relationship between the blinding effect of lights from oncoming vehicles and the accident, this is one of the factors to be considered on the issue of reasonable care and instructions concerning it may properly be given. *Putnam* v. *Bowman,* 89 N. H. 200, 205; *Monroe* v. *Sterling,*

92 N. H. 11, 14; *Fine* v. *Parella,* 92 N. H. 81, 83; *Stanley* v. *Bowen Bros.,* 96 N. H. 467, 468, 470. On the other hand, where the evidence is too indefinite to warrant a finding that the accident could have been avoided if the lights had been dimmed, no instruction on this issue to the jury is required. *Wells* v. *O'Keefe,* 91 N. H. 299, 303; anno. 22 A. L. R. (2d) 427. In the present case the evidence as to the causal nature of the failure of the defendant to dim his lights is similar to that in the *Wells* case. Although the jury were not instructed that the failure of the defendant to dim his lights was a separate and independent issue of negligence, the Court did advise the jury that they could consider "the lights and road and weather and all of the circumstances that you've heard and decide this question of who failed to turn to the right of the center of this road." See 29 NCCA (n. s.) 112.

A reading of the record clearly indicates that the pivotal issue in this case was who failed to seasonably turn to the right prior to the collision. The failure to dim the lights on the evidence was one of the surrounding circumstances to be considered by the jury but was not an independent basis of negligence upon which the Court was required to give a specific instruction to the jury. The most that can be said in favor of the plaintiff is that if the failure to give the instruction was error, it could not be reversible error on this record in view of the fact that the jury were told to consider the lights as a factor in determining the main issue of negligence. It cannot be said that the jury were misled or that the plaintiff's case was not fully and accurately presented to the jury by the Court's charge which comprised thirteen printed pages. *Paradis* v. *Greenberg,* 97 N. H. 173; *Kimball* v. *Dwyer,* 97 N. H. 304.

A photographer produced by the plaintiff identified certain photographs which were introduced as exhibits. He was then asked to indicate on a plan of the road where certain marks appeared with reference to the center line of the road. Objection was made on two grounds; first, that the witness had not measured the road and did not know where the center of the road was with reference to the marks that appeared in the photographs, and secondly, because it was an impeachment of the state police officer who was called by the plaintiff and first testified. The Court sustained the objection. The second objection is not well founded since it is well settled that the rule prohibiting the impeachment of one's witness does not apply to contradiction by other witnesses. 3 Wig. Ev. (3rd *ed.*) *s.* 907. *Seavy* v. *Dearborn,* 19 N. H. 351, 355; *Swamscot Machine Co.*

338

v. *Walker*, 22 N. H. 457; *Thompson* v. *Resnik*, 85 N. H. 413, 415. The rule of this jurisdiction has been stated in *Woburn Bank* v. *Woods*, 77 N. H. 172, 178 as follows: "There is no rule of law which prevents a party from proving, if he can, that testimony he has adduced is erroneous. The rule that he shall not impeach his own witness does not mean that he cannot introduce otherwise competent evidence, merely because he has theretofore put in other evidence of a contradictory tenor. The authorities are all the other way." The question whether the witness had sufficient knowledge of the situation to be of aid to the jury was a discretionary matter with the Trial Court to which an exception is not availing. *Ricker* v. *Mathews*, 94 N. H. 313, 317; 2 Wig. Ev. (3rd *ed.*) *s.* 561; *Draper Corp.* v. *Pitman*, 97 N. H. 1. Since the ruling of the Trial Court may have been based on two grounds, one of which was sufficient, the plaintiff's exception is not sustained. *Vallee* v. *Company*, 89 N. H. 285, 290; *Mason* v. *Railway*, 79 N. H. 300, 304.

*Exceptions overruled.*

All concurred.