**277 P.2d 317**

**Hubert HATCH, Plaintiff-Appellant,**

**v.**

**C. B. STREBECK, Defendant-Appellee.**

**No. 5817.**

Supreme Court of New Mexico.

Nov. 26, 1954.

Rehearing Denied Dec. 21, 1954.

Compton & Compton, Portales, for appellant.

Smith & Smith, Clovis, for appellee.

SEYMOUR, Justice.

Appellant, a licensed real estate broker, sued appellee for $6,100, representing appellant's commission for procuring a purchaser ready, willing and able to buy certain property owned by appellee and upon which appellant had an exclusive option of sale for a period ending September 15, 1953.

The case was tried before a jury which found the issues in favor of the defendant,

appellee, after answering the following two special interrogatories:

"Did C. B. Strebeck and Hubert Hatch enter into a written contract whereby Hubert Hatch was given the exclusive right to sell the ranch in question, until September 15, 1953, based upon a valuable consideration paid therefor, the said Hubert Hatch to receive any price over and above the sum of $41,400.00 as his commission or compensation therefor?" Answer: "Yes."

"Did Hubert Hatch produce a purchaser of the property within the specified time, who was ready, willing and able to purchase it upon the terms given to Hubert Hatch by the said C. B. Strebeck?" Answer: "No."

The trial court denied motion for judgment notwithstanding the verdict or for new trial, and entered judgment for appellee from which this appeal is taken.

Appellant has raised two points. The first asserts the trial court's error in overruling appellant's motion for a directed verdict made first by the appellant after he had called appellee as an adverse witness while in the midst of putting on appellant's own case as a plaintiff, and renewed at the close of all the evidence.

■■■ The first motion was properly denied by the trial court because the time of the motion was not appropriate. Such a motion ordinarily cannot be made until movant's adversary has presented his case or rested. From the point of view of the orderly administration of justice and by the wording of Rule 50(a) of the Rules of Civil Procedure, we believe this to be the rule applicable to the first motion in the instant case. See 64 C.J., § 425 (Time for Motion), p. 431; Horridge v. Nichols, 1922, 194 Iowa 295, 189 N.W. 763; Williamson v. Holloway, 1918, 69 Okl. 254, 172 P. 44. Appellant has cited no cases in support of his position that this first motion was timely made.

■ ■■ As to appellant's motion for a directed verdict at the close of all of the evidence, it was in words as follows: "Comes now the Plaintiff and moves the Court to instruct a directed verdict for the Plaintiff." Rule 50(a) of the Rules of Civil Procedure provides in part that "A motion for a directed verdict shall state the specific grounds therefor." The motion in question fails to state any grounds in support thereof and for that reason is defective and was properly denied.

Appellant's second point reads as follows:

"The jury erred in answering special interrogatory No. 2, by answering 'no' thereto; the general verdict and the judgment entered thereon are against the evidence and are supported by no substantial competent testimony."

The significant error assigned by appellant. upon which appellant's second point is. based is the alleged error of the trial court in not granting appellant's motion for judgment notwithstanding the verdict or for a new trial. Appellant's motion for judgment notwithstanding the verdict raises the substantial evidence rule with respect to the jury's answer to interrogatory numbered 2.

In connection with this point, the controlling factor is the evidence introduced at trial and appearing in the transcript of testimony. Briefly it shows: On the 19th day of February, 1953 appellant and appellee executed a written contract whereby appellee granted appellant the exclusive right to sell some 2500 acres of fee lands and certain leases on the following terms: That the option be effective from date to September 15, 1953 for sale at a price of $41,400 exclusive of commission; that "There is indebtedness now standing against said land in the amount of $30,000.00, which may be assumed by buyer as part of the purchase price. Any price over and above the aforementioned $41,400.00 shall be considered as commission due the party of the second part on the sale of said land, and commission on the Horner-Strebeck trade, which is already made and consumated"; and that appellant put forth reasonable effort and advertisement in his attempt to sell.

Omitting certain irrelevant facts, prior to the 14th day of August, 1953, appellant procured a purchaser by the name of Cox, and after showing the property to the prospective purchaser and advising appellee, appellant prepared a purchase contract which was signed by Cox and which appellee refused to sign. The purchase contract specified a consideration of $47,500; it carried the usual provisions as to abstract examinations and deeds and, as to the payment of the purchase price, specified: $6,000 cash upon placing of deed in escrow with the First National Bank of Portales as escrow agent; it stated that the existing mortgage indebtedness in the approximate sum of $30,000 "is part of the consideration here-for and Second Party assumes same for said amount as of the consummation of this contract, and shall pay the addition- sum of $11,500.00 cash due under the purchase, price upon acceptance by him of title. * * *." There was a further provision that the $6,000 deposited in escrow should be liquidated damages in the event of Cox's failure or refusal to complete the transaction, in which event "said escrow agent is hereby authorized * * * to pay said sum in escrow to Hubert Hatch, agent for First Parties herein, to be applied on obligations owing him by First Parties on this and the former Horner-Strebeck contract, and at such time this contract shall be terminated"; there was a further provision for the proration of 1953 taxes.

On the night of August 13, 1953, appellant advised appellee of the contemplated

transaction and appellee agreed to meet with the purchaser the following morning to complete the sale and suggested that the documents be prepared by appellee's attorney. The following morning when appellee appeared, he found already prepared the contract detailed above, signed by T. B. Cox, the purchaser, and a warranty deed for signature by himself and wife. Appellee read the contract but did not look at the deed. He objected to the $6,000 down money and the fact that, upon failure or refusal of purchaser to complete the contract, the $6,000 was to be paid to appellant to be applied on obligations owing to appellant by appellee. He, appellee, demanded a cashier's check for $11,400, the net amount of cash that he was to receive out of the transaction. Purchaser left the conference, went to the bank and procured a cashier's check for $11,400, payable to the bank, returned to the conference and tendered the check for escrow. During this conference, appellee also demanded that purchaser pay all 1953 taxes and accrued interest on the $30,000 indebtedness. The testimony is conflicting as to the breaking-up of this conference. Appellee's version thereof was appellant and purchaser refused to comply with his demand that they go to the office of appellee's attorney to draw the papers. In any event, as of that time, appellee withdrew and left town. As of the same time, the record indicates that appellee was insisting upon payment of the 1953 taxes and accrued interest. In this same regard, on the following day purchaser sought out appellee, offered the $11,400 and agreed to pay 1953 taxes and accrued interest.

█ Williams v. Engler, 1942, 46 N.M. 454, 131 P.2d 267, stands for two accepted principles of law which require no further citation of authority: (a) That a broker has earned and is entitled to his commission when he has procured a purchaser who is ready, able and willing to buy on the terms given to the agent by the owner. (b) For a broker to be entitled to his commission it is unnecessary that a binding contract be executed by the buyer and seller.

█ The terms of the exclusive option to sell here granted by owner-appellee to appellant were simply the procuring of a purchaser who would pay a price of $41,400 exclusive of commission, with the right on the part of the buyer to assume the $30,000 indebtedness as a credit on the purchase price. Viewed with any sense of reality, this purchaser was ready, willing and able to meet the purchase terms specified by appellant. Appellee's demands for payment of all of 1953 taxes and accrued interest on the indebtedness were completely outside of and in addition to the terms originally authorized. In any such contract silent on these items, taxes properly would be prorated and interest accrued to the date of

sale paid by the seller. It is suggested that the warranty deed prepared and submitted to appellant did not carry a clause whereby purchaser assumed and agreed to pay the mortgage. This is immaterial for several reasons. Purchaser admitted that he never read the deed and, therefore this could not serve as a basis for his refusal to consummate the transaction; further, the contract as submitted to him includes the language "That there is an existing mortgage indebtedness against said lands in the approximate sum of $30,000; that said indebtedness is part of the consideration herefor and Second Party assumes same for said amount as of the consummation of this contract, * * *." It is argued by appellee that purchaser's wife did not sign this assumption agreement; however, we are concerned here, not with the execution of a contract of sale in accordance with certain terms, but with the willingness and ability of purchasers to meet such terms. The only evidence in the record is to the effect that purchasers were not only willing to assume the mortgage, but intended to do so. We find no merit in this portion of appellee's contention.

■ Nor did the terms established by appellee provide for the services of any specific lawyer. Without questioning the right of appellee to have counsel, we do not deem the refusal of purchaser and appellant to go to a particular lawyer's office a refusal on purchaser's part to meet seller's terms at a time when seller was making demands of further and additional consideration by way of interest and taxes.

■ It is further argued that because in the proposed contract there was a provision for liquidated damages in the amount of $6,000, this was not a contract subject to specific performance, but an option from which purchaser could escape on the payment of a forfeit. In support of this theory, appellee cites California Land Security Co. v. Ritchie, 1919, 40 Cal.App. 246, 180 P. 625. We do not consider this case applicable here, and a clear statement of the controlling law appears. 81 C.J.S., Specific Performance, § 51, Effect of Provision for Liquidated Damages of Penalty, p. 531.

The judgment of the trial court is reversed and the cause remanded with directions to the trial court to enter a judgment for plaintiff in the sum of $6,100 and costs.

It is so ordered.

McGHEE, C. J., and SADLER and LUJAN, JJ., concur.

COMPTON, J., not participating.