381 P.2d 675

**HOME FIRE AND MARINE INSURANCE COMPANY, Plaintiff-Appellant,**

**v.**

**PAN AMERICAN PETROLEUM CORPORATION and Curtis V. Myers, Defendants-Appellees.**

No. 7193.

Supreme Court of New Mexico.

May 13, 1963.

**164**

McAtee, Toulouse, Marchiondo, Ruud & Gallagher, Albuquerque, for appellant.

Atwood & Malone, R. D. Mann, Robert A. Johnson, Roswell, for Pan American Petroleum Corp.

Neal & Fort, Carlsbad, for Curtis V. Myers.

MOISE, Justice.

Home Fire and Marine Insurance Company, hereinafter referred to as the "insurer" filed suit to recover amounts paid by it to Frank M. Late, Cactus Drilling Company, and Clark-Dale Drilling Company, hereinafter referred to as "insureds" under a policy of insurance against loss of a cer-

tain drilling rig and equipment by fire. Upon receiving the amount of the loss the insureds executed two identical instruments denominated "loan receipt" the material portions of which read as follows:

"Received from the Home Fire and Marine Insurance Company, hereinafter referred to as 'Company', the sum of ——————— Dollars, as a loan, without interest, repayable only in the event and to the extent of any net recovery the undersigned may make from any person, persons, corporation or corporations, or other parties, causing or liable for the loss or damage to the property described below, or from any insurance effected on such property and as security for such repayment the undersigned hereby pledges to the said 'company' all his, its or their claim or claims against said person, persons, corporation or corporations, or other parties, or from any insurance carrier or carriers, and any recovery thereon, and hereby delivers to said 'company' all documents necessary to show his, its or their interest in said property.

"The undersigned covenants that no settlement has been made by the undersigned with any person, persons, corporation or corporations, or other parties against whom a claim may lie, and no release has been given to anyone responsible for such loss and that no such settlement will be made, nor release given without the written consent of the said company; and the undersigned covenants and agrees to cooperate fully with the said company, to promptly present claim and, if necessary, to commence, enter into and prosecute suit against such person or persons, corporation or corporations, or other parties, through whose negligence or other fault the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in his, its or their own name.

"In further consideration of said advance the undersigned hereby guarantees that he, it or they are the owners of said property and entitled to recover upon said claim for loss or damage thereto, and hereby appoints the managers and/or agents of the said 'company' and their successors, severally, his, its or their agents and attorneys-in-fact, with the irrevocable power, to collect any such claim or claims, and to begin, prosecute, compromise or withdraw in his, its or their name, but at the expense of the said 'company', any and all legal proceedings that the said 'company' may deem necessary to enforce such claim or claims, and to execute in the name of the undersigned, any documents that may be necessary to carry the same into effect for the purposes of this agreement.

"Any legal proceedings are to be under the exclusive direction and control of said 'company.'"

The complaint filed by the insurer asserted a right to recover from Pan American Petroleum Corporation, hereinafter referred to as "owner" and Curtis V. Myers, the welding contractor on the job, hereinafter referred to as "Myers" claiming that the fire which destroyed the drilling rig and equipment resulted from the negligence of the owner and of Myers, and that the insurer was subrogated to the rights of the insureds. The specific facts giving rise to the lawsuit need not be detailed in connection with the first issue to be considered.

As already noted, the insurer was the only plaintiff in the original complaint. The defendants (owner and Myers) answered the complaint and filed a motion to dismiss asserting that the plaintiff (insurer) was not the real party in interest authorized to bring suit. After a pretrial conference, an amended complaint was filed in which the insureds were joined with the insurer as parties plaintiff. No objection was made to the continued presence of the insurer as a party plaintiff. Amended answers were filed by both the owner and Myers and in due time the cause came on for trial before a jury on the issue of liability only, the issue of damages being postponed to a later hearing. The trial resulted in a directed verdict for both the owner and Myers.

Thereafter, timely appeal was taken by the insurer, but not by the insureds. The owner and Myers, by motion to dismiss the appeal, present for decision here the question of (1) whether the insured is a proper party to appeal under Supreme Court Rule 5(1) (§ 21–2–1(5) (1), N.M.S.A.1953) since it was not a real party in interest in the lower court; and (2) whether, since the insureds have not appealed, the judgment has become final as to them and the issues sought to be raised here are accordingly moot.

It is the position of the owner and Myers that the insurer was not the real party in interest entitled to prosecute the lawsuit (§ 21–1–1(17) (a), N.M.S.A.1953) and likewise is not a party aggrieved who may appeal from the final judgment entered herein. (§ 21–2–1(5) (1), N.M.S.A.1953).

Although insurer argues that it was a real party in interest, and relies heavily upon our decision in Sellman v. Haddock, 62 N.M. 391, 310 P.2d 1045, as so holding, it attempts to fortify its position here, as it did below, by moving to add the insureds as appellants under Supreme Court Rule 8. (§ 21–2–1(8), N.M.S.A.1953).

■ Inasmuch as the requirements for appeal within the time and in the manner provided by the rules is jurisdictional, Chavez v. Village of Cimarron, 65 N.M. 141, 333 P.2d 882; William K. Warren Foundation v. Barnes, 67 N.M. 187, 354 P.2d

126, the right to add parties must be contingent on an appeal having been perfected. Accordingly, we proceed to a consideration of the motion to dismiss the appeal.

Careful study of Sellman v. Haddock, supra, convinces us that it cannot be considered as authority for the proposition that an insurance company which has advanced money to an insured and has taken a loan receipt is the real party in interest entitled to sue a third party tort feasor. In that case, the insurance company was held to be a real party in interest. However, the loan receipt was not before the court and its terms were unknown. The insured testified that he had given the insurance company authority "to collect from whoever caused the damage * * *." The court pointed out that in considering the case, this was considerably more important in determining who was the "real party in interest" than the simple statement that a loan receipt had been given.

The court stated that "real party in interest" was to be determined by whether one was the owner of the right being enforced, and in position to discharge the defendant from the liability asserted in the suit, citing Reagan v. Dougherty, 40 N.M. 439, 62 P.2d 810, and concluded in the light of the facts noted above that the insurance company was a necessary and indispensable party.

The facts confronting us and the issue to be determined are somewhat different. The insurer was a party below. However, when the question of whether it was the real party in interest was raised by motion, the insureds were joined. Unquestionably, where it is determined that the loan receipt should be given effect according to its form as a loan, the courts hold that the insureds are the real party in interest, and suit must be brought in their name. 2 Barron & Holtzoff 23, § 482; 3 Moore's Federal Practice, § 17.09.

There are cases, however, holding the loan receipt to be payment resulting in subrogation of the insurance company to the rights of the insured. The cases so holding are, in our opinion, a small minority and involve only a relatively few jurisdictions. See notes in 1 A.L.R. 1528, 132 A.L.R. 607, and 157 A.L.R. 1261.

What we must determine is not whether the insurer was a "real party in interest" but rather, was it a "party aggrieved" by the decision of the trial court. (Supreme Court Rule 5, § 21–2–1(5), N.M.S.A.1953). As early as 1912 in the case of Bass v. Occidental Life Insurance Company, 18 N.M. 282, 135 P. 1175, we held the person directly interested and whose interests are injuriously affected by the judgment may appeal therefrom as a party aggrieved. More recently, in Marr v. Nagel, 58 N.M. 479, 272

P.2d 681, we held that the defendant in a tort action by virtue of his right to obtain contribution from a joint tort feasor was aggrieved by a judgment exonerating his co-defendant from responsibility.

In our most recent pronouncement on the subject, we held that one having a tort claim against a decedent, and who had filed objections to the executor's final report, was a person interested in the estate and a party aggrieved so as to be entitled to appeal from a decision adverse to his position. Dunn v. Lindsey, 68 N.M. 288, 361 P.2d 328, 87 A.L.R.2d 1227.

■ We are convinced that parties may appeal only if they have a real and substantial interest in the subject matter before the court and are aggrieved or prejudiced by the decision, State ex rel. Simeon v. Superior Court of King County, 20 Wash.2d 88, 145 P.2d 1017; or, as stated by the Supreme Court of New Jersey in the recent case of Howard Savings Institution of Newark v. Peep, 34 N.J. 494, 170 A.2d 39, to be aggrieved, a party "must have a personal or pecuniary interest or property right adversely affected by the judgment in question." To like effect is In re Appeal of Town of Greenfield, 271 Wis. 442, 73 N.W.2d 580.

■ Although we might occupy ourselves with considering whether or not "real party in interest" and "party ag-

grieved" are synonymous, we do not perceive how such an exercise would be profitable. It is for us to determine if under the facts and circumstances here present, the insurer may be considered a "party aggrieved." That it comes within the definitions and descriptions set forth above would seem to be clear. Accordingly, we experience no difficulty in concluding that the insurer was a party aggrieved by the judgment and that this court has jurisdiction of this appeal. The motion to dismiss is overruled.

Having overruled the motion to dismiss, there being an identity of interest we perceive of no reason for not granting the motion to add the insureds as additional appellants under Rule 8 (§ 21–2–1(8), N.M. S.A.1953). Hence, we do so, and the appeal shall proceed with all the plaintiffs below appearing as appellants here. We do this without determining that they are necessary to the appeal, but on their request, there being no prejudice to appellees. Compare Ferguson-Steere Motor Co. v. State Corporation Commission of New Mexico, 59 N.M. 220, 282 P.2d 705.

This brings us to a consideration of the appeal proper.

In order to understand the basis for appellants' appeal it is necessary to relate a few additional facts. Insureds had a written drilling contract with the owner. It is not necessary to consider the provisions of

the contract in order to dispose of this appeal.

There is no controversy over the fact that at the time of the fire, the well casing had been pulled and was being run back into the hole when Myers was called by the designated representative of the owner, one Jinkins, under whose direct supervision the work was being done, to weld two of the sections together.

Reynolds was the tool pusher of the insureds and was the first witness called by appellants. While he was testifying and before cross-examination had been completed, at the suggestion of the Judge, a motion to dismiss was made and sustained.

At that point, Reynolds had testified that he had been instructed previously by Jinkins to buy two fire extinguishers to be used at the well; that he had made a trip to Artesia to get them but didn't find any, and so none had been bought; that when Myers arrived at the well he was directed by Reynolds to the rig floor and helped to get his equipment onto the floor by insured's employees; that the cellar under the rig floor had not been cleaned out for at least 12 hours, and possibly 16 hours before work was begun by Myers; that it is usually the job of the drilling crew to hook up the jet line which could be used to clean out the cellar, and that this hadn't been done; that the drilling crew had cleaned out the cellar at an earlier time when another welding job

had been done; that keeping the cellar jetted out and the area clean was part of the job of the drilling crew, and if it was done it would have to be done by them; that the fire in the instant case resulted from oil which was in the cellar.

Based upon the foregoing proof in the record, appellees moved to direct a verdict in their favor on the ground that plaintiffs were bound by the evidence of their own witness, Reynolds, and reasonable minds could not differ that he was negligent and, accordingly, under the terms of the contract, his employers (insureds) could not recover. The trial judge agreed, and directed a verdict for appellees. Counsel for appellants protested that the question of contributory negligence was for the jury, and further, that evidence would be produced to the effect that the duty was the owner's and Jinkins' to inspect the cellar, and that Jinkins was in complete charge of the operations. Appellants being overruled, judgment for appellees pursuant to the directed verdict was entered. This appeal followed.

Appellants' first complaint on this appeal is directed to the action of the trial court in directing a verdict when he did. It is clear that appellants' first witness was being cross examined when this was done. No opportunity was given to straighten out or explain any of the testimony of Reynolds through re-direct examination.

Section 21-1-1(50) (a), N.M.S.A.1953, and Hatch v. Strebeck, 58 N.M. 824, 277 P.2d 317, are relied upon by appellants as supporting their position that the motion for a directed verdict was premature. In Hatch v. Strebeck, supra, the action of the trial court in overruling a motion for a directed verdict made by appellant after he had called appellee as an adverse witness and while he was putting on his own case was considered by the court. Concerning the motion, we had the following to say:

"The first motion was properly denied by the trial court because the time of the motion was not appropriate. Such a motion ordinarily cannot be made until movant's adversary has presented his case or rested. From the point of view of the orderly administration of justice and by the wording of Rule 50(a) of the Rules of Civil Procedure, we believe this to be the rule applicable to the first motion in the instant case. See 64 C.J., § 425 (Time for Motion), p. 431; Horridge v. Nichols, 1922, 194 Iowa 295, 189 N.W. 763; Williamson v. Holloway, 1918, 69 Okl. 254, 172 P. 44. Appellant has cited no cases in support of his position that this first motion was timely made."

Whereas, in that case, plaintiff made the motion for judgment in his favor before he had concluded his presentation and before defendant had done likewise, in legal effect it could be no different from the situation here present. Appellees moved for judgment in their behalf before appellants had concluded their case. As stated, ordinarily such a motion is not appropriate until movant's adversary has rested.

While it is stated that this is ordinarily true, it is clear that the circumstances where it is not true are those exceptional cases where a party has produced all the evidence he has on an aspect of the case that is determinative of his rights, as where all proof of liability has been presented and all that remains to be established are damages. In such a case, if a motion is made and sustained because of failure to prove liability, there is no prejudice, and no reversible error. Such a case is Moody v. Hastings, N.M., 381 P.2d 207. Neither do we find support for appellees' situation in the cases cited by them. Three of the cases cited by appellees wherein the court's action was sustained are of this type. The fourth case, Perry v. First Corporation, 167 Cal. App.2d 359, 334 P.2d 299, instead of supporting appellees' theory, to our minds, is in line with and supports the conclusion reached by us herein, contrary to appellees' position.

Appellants, from all that appears, had in no sense completed presentation of their proof on any aspect of their claim. Possibly, they will never be able to establish their right to a recovery. However, in the

present posture we are unable to determine if this is true or not. While we agree with appellees that § 21–1–1 (50) (a), N.M.S.A. 1953, by its express terms does not deny that a motion for a directed verdict may be made before an adversary has rested, as stated in Hatch v. Strebeck, supra, such must be its general application if an orderly administration of justice is to be accomplished. Our case is closely comparable to Bethers v. Wood, 10 Utah 2d 313, 352 P.2d 774. See also Murphy v. Eraas, 41 S.D. 500, 171 N.W. 326.

 It is clear from the court's remarks that he directed the verdict because in his opinion, based upon the testimony of Reynolds, reasonable minds could not differ as to the negligence of the insureds. The difficulty with this position lies in the fact that other evidence might have been produced which could alter the situation. A court may properly direct a verdict where there can be no disagreement among reasonable minds that a plaintiff is guilty of contributory negligence. Sandoval v. Brown, 66 N.M. 235, 346 P.2d 551. While recognizing this to be the rule, how can a court determine that there can be no disagreement when all the proof has not been heard? Possibly, there was something in the court's knowledge of oil field operations which supports his conclusion. However, the record in the court, by which he is limited in the trial, fails to disclose, so far as we can determine, that additional proof might not overcome the adverse effects of the testimony elicited from Reynolds, the tool pusher, up to the time his testimony was terminated.

In Merrill v. Stringer, 58 N.M. 372, 271 P.2d 405, we said that a verdict should not be directed unless, "in the exercise of sound discretion the court can say there is neither evidence nor permissible inference which would support a verdict for the plaintiff." Until plaintiffs had presented all their witnesses and their testimony had been completed, how could the court say there was no evidence or permissible inference to support a verdict for plaintiff? At that time the evidence, together with all inferences to be drawn therefrom, was to be regarded in a light most favorable to appellants. Ortega v. Texas-New Mexico Railway Company, 70 N.M. 58, 370 P.2d 201.

Appellees argue that since contributory negligence had been proven by the witness Reynolds, there could be no purpose in continuing the trial unless appellant could have disproved what was already proved.

 What has been said above should dispose of this argument. Only one additional word needs to be added. We recognize the rule to be that appellants could not impeach their witness, Reynolds. However, this does not mean that other competent evidence to prove the facts to be different from those testified to by him could not be

introduced in the case by appellants. Williams v. Schaeffer, 262 Ala. 636, 80 So.2d 722; Brock v. Robinson, 97 N.H. 334, 88 A.2d 306; Travelers Ins. Co. v. Blazier, Tex.Civ.App.1950, 228 S.W.2d 217.

Appellees assert that no objection was made that the motion was not timely and not being jurisdictional cannot be raised for the first time in the Supreme Court (§ 21–2–1(20), N.M.S.A.1953). They also point out that no tender was made of other evidence that would contradict the proof of appellants' negligence. We do not so understand the record. When the motion was made, it was sustained by the court with a statement to the effect that no argument on the motion was needed. The court further stated that the proof showed negligence of Reynolds and his employers, and the responsibility was employers under the contract.

At the first opportunity, appellants' counsel objected stating that the question of contributory negligence was for the jury, and that by the evidence to be brought forward, if permitted, showing would be made that it was the duty of the owner to inspect the cellar, and that the operations were under control of the owner. The record clearly discloses that one of the elements considered most damaging by the court was Reynolds' admission that he directed the welder to work over the cellar without checking to see if there was oil gathered there.

■ Where, as here, the trial court has taken it upon himself to grant a directed verdict before the evidence has all been presented, we are not disposed to indulge any presumptions as to the correctness of his ruling. Compare Williamson v. Holloway, 69 Okl. 254, 172 P. 44, and the cases cited therein. Neither do we consider that Turner v. Judah, 59 N.M. 470, 286 P.2d 317, gives appellees any aid. There, although the trial was halted before all the proof had been introduced, it appears from the report of the case that the court did not refuse to hear evidence tendered, but considered all of the evidence tendered as if it had been introduced, which action by the court was without objection of the parties. Such is not our situation.

In view of the disposition made of the case under the first point we do not reach the question of the proper meaning of the contract. So long as the case turns on the presence or absence of negligence on the part of the insureds, it is sufficient in connection with this appeal that we limit ourselves to the procedural problem which we have discussed. This is particularly true in light of the fact that the trial court ruled as he did because of his conviction that insureds were negligent and for that reason could not recover.

The cause is reversed and remanded with instructions that the trial court set aside its judgment, reinstate the cause on the docket and thereafter proceed to try the cause in a manner consistent herewith.

It is so ordered.

COMPTON, C. J., and NOBLE, J., concur.