SOUTHERN FARM BUREAU CAS-
UALTY INSURANCE COMPA-
NY, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,
Billy Graham, a minor, M. J. Graham,
Jack Shipley, Richard Hammond, and
W. V. Hammond, Defendants.

Civ. A. No. 1343.

United States District Court
W. D. Arkansas,
Fort Smith Division.

April 16, 1957.

Hardin, Barton, Hardin & Garner, Ft. Smith, Ark., for plaintiff.

Dobbs, Pryor & Dobbs, Ft. Smith, Ark., Batchelor & Batchelor, Van Buren, Ark., for defendants.

JOHN E. MILLER, District Judge.

### Statement

This case was tried to the Court without a jury on March 29, 1957, and at the conclusion of the trial the Court took the case under advisement pending receipt of briefs from the parties. The briefs have been received and now the Court, having considered the pleadings, ore tenus testimony of the witnesses, exhibits, and briefs of the parties makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact

**1.**

The plaintiff is a Mississippi corporation. The defendant, Allstate Insurance Company, is a corporation organized and existing under the laws of a state other

than Mississippi. The remaining defendants are each citizens and residents of Crawford County, Arkansas. The amount involved, exclusive of interest and costs, exceeds the sum of $3,000.

## 2.

The defendant, Richard Hammond, is the son of the defendant, W. V. Hammond. The defendant, Jack Shipley, is the son-in-law of W. V. Hammond and a brother-in-law of Richard Hammond.

In 1953 the defendant, Richard Hammond, owned a 1950 Oldsmobile. Subsequently Richard Hammond entered the armed forces, and the 1950 Oldsmobile was traded in on a 1950 Chevrolet pickup truck, which was purchased in the name of W. V. Hammond and was owned by him.

Later Richard Hammond was discharged from the service and returned to his home in Mountainburg, Arkansas. On December 20, 1955, the said defendants, W. V. and Richard Hammond, purchased as co-owners a new 1956 Oldsmobile from the De Witt Oldsmobile Company in Fort Smith, Arkansas. The 1950 Chevrolet pickup truck, owned by W. V. Hammond, was traded in on the new Oldsmobile, a credit of $650 being allowed therefor. In addition to the trade-in, $250 was paid in cash, of which amount W. V. Hammond paid $100 and Richard Hammond paid $150. The new Oldsmobile was purchased under a conditional sales contract. Richard A. Hammond signed as purchaser and W. V. Hammond signed as co-purchaser. The invoice of the De Witt Oldsmobile Company shows that the automobile was sold to "Richard A. or W. V. Hammond".

On the same day, December 20, 1955, W. V. Hammond took all of his automobile papers to the Farm Bureau Office in Van Buren, Arkansas. He showed these papers to Miss Mae Spoon who was working in the Farm Bureau Office. He advised her that his son, Richard Hammond, owned an interest in the automobile. The policy in question, No. A257077, was issued by the plaintiff, Southern Farm Bureau Casualty Insurance Company, to W. V. Hammond as named insured, said policy covering the 1956 Oldsmobile.

## 3.

Richard Hammond remained in Mountainburg, Arkansas, for a short time after the purchase of the new Oldsmobile. Then, in January 1956, Richard Hammond went to Texas to work, taking with him the new Oldsmobile. He worked in Texas until August 1956 and kept the Oldsmobile with him most of that time. While in Texas, Richard Hammond registered the Oldsmobile in his own name and a Texas certificate of title was issued to him. In August 1956 he returned to Mountainburg, Arkansas.

## 4.

In the spring of 1956 plaintiff sent a notice to W. V. Hammond that an additional premium of $8.50 would be required "primarily because of the fact that there are young drivers operating your vehicle"

## 5.

On September 1, 1956, W. V. Hammond, Richard Hammond, and Jack Shipley left Mountainburg in the 1956 Oldsmobile. Richard Hammond drove to Van Buren, Arkansas, where he and his father, W. V. Hammond, had some business to transact. Jack Shipley wished to go to Fort Smith for some reason and asked permission to drive the Oldsmobile. Either W. V. or Richard Hammond, or both of them, granted him permission to use the automobile.

Jack Shipley drove to Fort Smith, attended to his business, and then returned to Van Buren. In the meantime, W. V. and Richard Hammond had completed their mission. When Jack Shipley met them in Van Buren, he continued to drive and they took seats beside him in the front seat of the car. W. V. Hammond was riding in the middle and Richard Hammond was riding on the right-hand side of the front seat. Apparently no oral request was made at that time by Jack Shipley for permission to drive the Oldsmobile, but he was driving it

with the tacit consent of W. V. and Richard Hammond.

As the three parties were leaving Van Buren the 1956 Oldsmobile being driven by Shipley was involved in an accident with a motor bike being driven by the defendant, Billy Graham, a minor.

### 6.

The defendant, Billy Graham, by his father and next friend, M. J. Graham, and the defendant, M. J. Graham, individually, have instituted an action in the Crawford County Circuit Court against Jack Shipley, Richard Hammond, and W. V. Hammond, seeking damages in the sum of $28,450.

### 7.

Among other things, the policy issued by plaintiff to W. V. Hammond provides as follows:

"IV. Definition of Insured.

"Under Coverages A and B, the unqualified word 'insured' means the named insured and, if the named insured is an individual, his spouse, and also any person while using the automobile and any person or organization legally responsibile for its use, provided the actual use of the automobile is by the named insured or spouse or with permission of either."

The policy also requires the Company to defend any suit against the insured and to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage sustained by other persons as a result of the ownership, maintenance, or use of the 1956 Oldsmobile. There is no provision in the policy requiring the named insured to be the sole owner of the automobile, nor was there any declaration by W. V. Hammond that he was the sole owner of the 1956 Oldsmobile.

### 8.

The driver of the Oldsmobile, Jack Shipley, owned a 1955 Pontiac, upon which he had insurance with the defendant, Allstate Insurance Company. The Allstate Insurance Company policy was in full force and effect on September 1, 1956, and among other things the policy insured Shipley when operating an automobile not owned by him. The policy also provides "With respect to a substitute automobile or a non-owned automobile, Coverages A and B shall be excess insurance over any other collectible liability insurance of any kind available to the insured".

### Discussion

Plaintiff contends that W. V. Hammond owned no interest in the 1956 Oldsmobile, and therefore had no authority or power to give permission to Shipley to drive the automobile. And, in its amended complaint filed March 1, 1957, plaintiff alleged that the policy issued by it is null and void because W. V. Hammond had no interest in the automobile.

The defendants contend (1) that W. V. Hammond did own an interest in the automobile; (2) that even if he did not own an interest such ownership was not required by plaintiff's policy; and (3) in any event that plaintiff had full knowledge of the facts concerning ownership and is estopped to claim that W. V. Hammond could not give permission to Shipley to drive the automobile.

The Court has found as a fact that W. V. Hammond owned an interest in the automobile, and it is clear that his interest was such that he had the power and authority to grant permission to Jack Shipley to drive the automobile. With regard to the question of ownership, the Court's finding of fact is based primarily upon the conditional sales contract executed by W. V. and Richard Hammond as co-purchasers and by the fact that most of the down payment was paid by W. V. Hammond.

Plaintiff makes a subsidiary contention that Jack Shipley was not driving with the permission of W. V. Hammond. This contention is wholly without merit. Permission may be either express or implied, and even if W. V. Hammond did not give Shipley specific oral

permission to drive, he certainly gave Shipley implied permission by riding with him in the front seat and permitting him to drive on the way home. Compare, Stoll v. Hawkeye Casualty Co., 8 Cir., 193 F.2d 255; Hawkeye Casualty Co. v. Rose, 8 Cir., 181 F.2d 157.

■ Since W. V. Hammond was a co-owner of the automobile, and since Shipley was driving with the implied permission of W. V. Hammond, Shipley is and was an insured under the provisions of Insuring Agreement No. IV of the policy issued by plaintiff.

In view of the conclusion of the Court as above set forth, it is unnecessary for the Court to pass upon the other two contentions of the defendants, i. e., the contention that ownership by W. V. Hammond was not required and the contention that plaintiff is estopped. With regard to the latter contention, however, there are a number of statements in General Insurance Co. of America v. Western Fire & Casualty Co., 5 Cir., 241 F.2d 289, which might be made in the instant case. But the Court prefers to rest its decision in the instant case upon its finding that W. V. Hammond was a co-owner of the automobile and that Shipley was driving with his permission.

■ It follows that plaintiff has a duty to defend the action as to the named insured, W. V. Hammond, and as to Shipley, who was driving with his permission, and to pay any damages recovered against them or either of them not in excess of the limits set out in the policy. Richard Hammond was not the named insured and was not driving the automobile, and the only theory upon which plaintiff might owe him any duty would be on a finding that he was a person "legally responsible" for the use of the automobile. This question was given little attention by the parties during the trial and was not argued by the parties in their briefs. Upon the evidence introduced in the instant case the Court is unable to say that Richard Hammond was legally responsible for the use of the automobile, and therefore plaintiff owes no duty to Richard Hammond.

■ The defendant, Allstate Insurance Company, under its policy has a duty to pay on behalf of Jack Shipley any damages recovered against him in excess of his coverage under plaintiff's policy. Inasmuch as the plaintiffs in the Crawford County Circuit Court are seeking a judgment in excess of the policy limits of the policy issued by plaintiff, the defendant Allstate Insurance Company, has a duty to assist in the defense of that case insofar as the defendant Shipley is concerned.

### Conclusions of Law

**1.**

The Court has jurisdiction of the parties and the subject matter herein.

**2.**

The plaintiff, Southern Farm Bureau Casualty Insurance Company, is obligated to defend the suit against W. V. Hammond and Jack Shipley in the Crawford County Circuit Court, and to pay on behalf of W. V. Hammond and Jack Shipley all sums which they shall become legally obligated to pay as damages, if any, in said action, within the limits of liability named in the policy.

**3.**

The plaintiff under the evidence in this action owes no duty to the defendant, Richard Hammond.

**4.**

The defendant, Allstate Insurance Company, has a duty to assist in the defense of the case insofar as the defendant Jack Shipley is concerned, and to pay on behalf of Jack Shipley any damages recovered against him in excess of the collectible liability insurance available to Shipley under plaintiff's policy.

A judgment in accordance with the above should be entered.