501 P.2d 673

Manuela LUJAN, Administratrix of the Estate of John F. Lujan, Deceased,
Plaintiff-Appellee,

v.

Reynaldo GONZALES and Reynaldo Gonzales, Jr., Defendants and Third-Party Plaintiffs-Appellees,

v.

ALLSTATE INSURANCE COMPANY, Third-Party Defendant and Plaintiff in Intervention-Appellant,

v.

Reynaldo GONZALES, Jr., Defendant in Intervention-Appellee.

No. 794.

Court of Appeals of New Mexico.

July 21, 1972.

Appellant's Rehearing Motion Denied Aug. 10, 1972.

Intervention-Appellee's Rehearing Motion Denied Aug. 11, 1972.

Certiorari Denied Sept. 26, 1972.

LeRoi Farlow, Farlow & Lill, Albuquerque, for third party defendant-appellant.

Thomas L. Bonham, Domenici & Bonham, Albuquerque, for plaintiff-appellee.

N. Tito Quintana, Albuquerque, for defendants and third party plaintiffs-appellees.

## OPINION

WOOD, Chief Judge.

Decedent Lujan died from injuries received in an automobile accident. Lujan's vehicle was struck by a pick-up owned by Reynaldo Gonzales, the father, and driven by Reynaldo Gonzales, Jr. Suit was filed against both the father and the son. The father was subsequently dismissed as a defendant. The liability of the son (Gonzales) was admitted.

At the time of the accident, Gonzales was the named insured in a liability policy issued by Allstate (Allstate Insurance Company). A liability policy issued to the father by Farmers (Farmers Insurance Group) covered the truck. A dispute arose as to whether Gonzales was covered under the Allstate policy. The dispute was included in the wrongful death action by appropriate pleading and the issues in this dispute were tried, and judgment entered, prior to trial of the damage issue between Lujan and Gonzales. After the damage issue in the wrongful death claim was tried, a judgment was entered in favor of Lujan against Gonzales and in favor of Gonzales against Allstate. Allstate's appeal is directed to both judgments.

The issues involve: (1) sufficiency of the notice of appeal; (2) insurance coverage; (3) duty to defend; (4) bad faith of Allstate; (5) attorney fees as damages; (6) propriety of the amount of damages; and (7) damages for a dilatory appeal.

*Sufficiency of the notice of appeal.*

■ Attorney Quintana, on behalf of Gonzales, asserts Allstate's notice of appeal is not effective to appeal the portion of the judgment which awarded Gonzales judgment for damages against Allstate. See § 21–2–1(5)(5), N.M.S.A. 1953 (Repl.Vol. 4).

The notice of appeal specifically identifies the judgment resulting from the first trial where Allstate's liability to Gonzales was determined. It also specifically identifies that portion of the second judgment which awarded damages to Lujan. It does not specifically identify the portion of the second judgment which carries forward Allstate's liability to Gonzales by naming the monetary amounts of that liability. However, the intent to appeal this aspect is clear. Accordingly, we hold the notice of appeal to be sufficient and that Gonzales has not been misled. Baker v. Sojka, 74 N.M. 587, 396 P.2d 195 (1964); compare Mabrey v. Mobil Oil Corporation, (Ct. App.), No. 838, decided March 31, 1972.

*Insurance coverage.*

The father owned a Chevrolet pick-up which was insured by Farmers Insurance Group. The son owned a Ford car which was insured by Allstate. The son was driving his father's pick-up when the accident occurred.

The Allstate policy insured the son with respect to a non-owned automobile. A non-owned automobile was defined to include an automobile " . . . not owned by the named insured or any relative. . . ." However, a relative was defined as " . . . a relative of the named insured who is a resident of the same household." If the father and son were residents of the same household, the Chevrolet pick-up would be a vehicle owned by a "relative" and the coverage for a non-owned automobile would not apply. Thus, Allstate's coverage of the son, while operating the Chevrolet pick-up, depends on whether the father and son were residents of the same household. See Anaya v. Foundation Reserve Insurance Company, 76 N.M. 334, 414 P.2d 848 (1966).

The trial court found that at the time of the accident the son was not residing in the home of his father and that the Allstate policy afforded liability coverage on the accident in question. Allstate contends these findings are not supported by substantial evidence; that at best the evidence on the question is equally consistent with both residency and non-residency and, therefore, the evidence does not support a finding of non-residency. See Stambaugh v. Hayes, 44 N.M. 443, 103 P.2d 640 (1940). We disagree.

Allstate admits that the son testified at trial that at the time of the accident he was living with a friend, Mr. Griego. Griego lived at a location which was not the father's residence. Allstate contends that this trial testimony is not credible because the son had made contrary statements which were in evidence. At most, this raised a conflict in the son's testimony. It was for the trial court, as the trier of fact, to resolve these conflicts. Hughes v. Walker, 78 N.M. 63, 428 P.2d 37 (1967).

Allstate contends the only testimony supporting the finding of non-residency is that of the son. This is incorrect. Griego testified the son was living at his house when the accident occurred. Although there are some conflicts in Griego's testimony, these conflicts, the same as the conflicts in the son's testimony, were to be resolved by the trial court.

Further, the father testified that his son was not residing with him at the time of the accident. There are no conflicts in the testimony given by the father.

■ The testimony of the son, Griego and the father is substantial evidence of the non-residency of the son. In the light of this testimony, we cannot say the evidence is equally consistent with residency and non-residency. The trial court could properly find that the son was a non-resident and that Allstate's policy afforded liability coverage.

Allstate's contentions under this point are based on evidence which would support a

finding of residency. In urging this court to accept the evidence on which it relies, and accept its view that the evidence as to non-residency is not credible, Allstate, in effect, asks us to weigh the evidence. We neither weigh the evidence nor decide the credibility of witnesses. That is the function of the trial court. Svejcara v. Whitman, 82 N.M. 739, 487 P.2d 167 (Ct.App. 1971).

### Duty to defend.

Allstate's insurance policy states: "Allstate will defend any lawsuit, even if groundless, false or fraudulent, against any insured for such damages which are payable under the terms of this policy. . . . "

■ The trial court determined that Allstate breached its duty to defend. One of the findings is that Allstate "refused" to defend. Allstate asserts this finding is not supported by substantial evidence. At the trial of the issues between Gonzales and Allstate, the evidence is undisputed that Allstate had been requested to defend Gonzales; that Allstate had not undertaken the defense and that in May, 1969, Allstate disclaimed "any liability or obligation" under its policy. This is substantial evidence that Allstate had refused to defend. In so holding, we point out there is no issue as to Allstate's notice of the accident and notice of the suit against Gonzales. See State Farm Mut. Auto. Ins. Co. v. Foundation R. Ins. Co., 78 N.M. 359, 431 P.2d 737 (1967).

The trial court also found that because of Allstate's breach of contract in refusing to defend, Gonzales was required to employ the services of Attorney Quintana. In attacking this finding, Allstate does not assert a lack of substantial evidence that Gonzales was required to employ an attorney. It contends there was no breach of contract.

The claim is:

"There are two basic reasons why Allstate had no duty to defend Reynaldo Gonzales, Jr.: (1) The Allstate policy was excess insurance and the duty to defend rests with the primary carrier. (2) Allstate justifiably refused to defend be-cause of the statements of Reynaldo Gonzales, Jr. in leading the insurance company to reasonably conclude that the policy did not cover Reynaldo Gonzales, Jr. while driving his father's pick up truck because he and his father were residents of the same household."

Cases cited by Allstate support its claim that the primary duty to defend rests upon the company with primary coverage. See Fireman's Fund Indem. Co. v. Freeport Insurance Co., 30 Ill.App.2d 69, 173 N.E.2d 543 (1961); Pleasant Valley Lima Bean Grow. v. Cal-Farm Insurance Co., 142 Cal. App.2d 126, 298 P.2d 109 (1956); Travelers Indemnity Company v. Dees, 235 F.Supp. 515 (E.D.S.C.1964). That is not the issue here. In this case, Farmers had the primary insurance and it promptly and actively defended the suit against Gonzales.

■ Allstate, which provided excess insurance, also had a duty to defend. State Farm Mut. Auto. Ins. Co. v. Foundation R. Ins. Co., supra. Allstate contends this duty on its part ceased to exist once Farmers performed its duty to defend. We disagree.

■ Under Allstate's policy, it had an obligation to pay pursuant to its policy. Allstate's obligation to pay is independent of its obligation to defend. This is demonstrated by policy language which provides for a duty to defend groundless, false or fraudulent claims. If the duty to defend exists as to false claims where there would be no obligation to pay, it also exists as to valid claims where payment may be required. Allstate had a duty to defend *and* a duty to pay the amount of any excess within its policy limits. The fact that Allstate's insurance was excess did not relieve it of its duty to defend. American F. & C. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 280 F.2d 453 (5th Cir. 1960).

Allstate's duty to defend did not cease to exist because Farmers was defending Gonzales. Allstate had the duty to assist in that defense. Southern Farm Bureau Cas. Ins. Co. v. Allstate Ins. Co., 150 F.Supp. 216 (W.D.Ark.1957).

It may be true that Allstate refused to defend because of the statements of Gonzales in connection with the non-residency issue. It does not follow that the refusal to defend was justifiable. Even if Allstate had a good faith belief that there was no coverage, this belief, having been determined to be erroneous, is not a defense to the breach of the duty to defend. Landie v. Century Indemnity Company, 390 S.W.2d 558 (Mo.App.1965); Gedeon v. State Farm Mutual Automobile Ins. Co., 410 Pa. 55, 188 A.2d 320 (1963). See also, Western Casualty and Surety Company v. Herman, 405 F.2d 121 (8th Cir. 1968).

Finally under this point, Allstate asserts there is no evidence that Gonzales was damaged by Allstate's refusal to defend. We discuss this contention in the fifth point of this opinion. Here, we hold only that the trial court was correct in ruling that Allstate had a duty to defend Gonzales and that it breached that duty.

### Bad faith of Allstate.

The accident resulting in Lujan's death occurred September 1, 1968. Suit for wrongful death, naming Gonzales as defendant, was filed October 1, 1968. Farmers, with primary coverage, entered its appearance, actively defended, and on December 20, 1968, made an offer of judgment under § 21–1–1(68), N.M.S.A.1953 (Repl. Vol. 4) in the amount of its policy limits.

Allstate was furnished copies of the summons and complaint on October 9, 1968, and was requested to " . . . adjust this matter as quickly as possible and with the interest of Mr. Gonzales in mind so that he may not be hit with an excess judgment." On January 13, 1969, Attorney Quintana wrote to Allstate, pointing out that there had been no response to the October 9th letter; informing Allstate of Farmers' offer of judgment; stating that Quintana had seen nothing in the court file indicating any initiative on Allstate's part in the defense of Gonzales; suggesting that the Allstate policy provided " . . . an additional sum with which you can negotiate with an attempt to settle this claim . . .;" and notifying Allstate that Gonzales would look to Allstate if Gonzales " . . . were to be hit with an excess judgment."

By letter dated March 31, 1969, Quintana again wrote to Allstate asking that the matter be settled as quickly as possible, again reminding Allstate of the possibility of an excess judgment against Gonzales and enclosing a copy of a letter from plaintiff's attorneys offering to settle for " . . . the sum of all applicable insurance coverages. . . ." Plaintiff's attorneys wrote to Allstate on April 7, 1969. In that letter it is stated that plaintiff's attorneys had received no communication from Allstate in the matter. The offer to settle for the sum of all applicable insurance coverage was repeated. The offer to settle was stated to be open until April 21, 1969. Facts indicating there could be a high verdict are also stated.

On May 9, 1969, Allstate wrote to Gonzales disclaiming " . . . all liability or obligation to you and to others under its policy. . . ." The reason: " . . . because the vehicle involved in the collision was owned by a relative of the same household and the Allstate . . . Policy excludes any non-owned car owned by a relative. . . ." Allstate's letter advised Gonzales that it would take no further action in connection with claims arising out of the accident " . . . and hereby withdraws from the matter entirely."

On May 23, 1969, Allstate again wrote to Gonzales and continued to disclaim coverage.

Allstate did take further action however. In October, 1969, it petitioned to intervene in the suit against Gonzales. Its petition was allowed October 14, 1969. The complaint in intervention alleges that demand had been made upon Allstate to contribute to the limits of its policy and prayed for a determination of its duty to either defend Gonzales or pay any sum within its policy limits. One day after Allstate's petition for intervention was filed, and while the petition was pending, Gonzales moved for permission to file a third party complaint

against Allstate. This motion was granted and the third party complaint was filed October 9, 1969.

Trial on the third party issue, which covered the same issues as the complaint in intervention, was held in February, 1970. The trial court found that Allstate had acted in bad faith toward Gonzales, its insured. Attacking this ruling, Allstate challenges four findings of the trial court. One of the challenged findings is that Allstate was either estopped, or barred by laches, from denying coverage of Gonzales under its policy. Having held that substantial evidence supports the finding of non-residency and therefore, coverage, we need not consider questions of estoppel or laches.

■ Allstate contends there is an absence of evidence to support the finding that it had full opportunity to investigate the facts of the accident. Our answer need go no further than the admission in Allstate's answer to the third party complaint that it did have such an opportunity. This admission supports the finding. Mozert v. Noeding, 76 N.M. 396, 415 P.2d 364 (1966); see Raulic v. United States, 400 F.2d 487 (10th Cir. 1968); McMurdo v. Southern Union Gas Co., 56 N.M. 672, 248 P.2d 668 (1952); Albright v. Albright, 21 N.M. 606, 157 P. 662, Ann.Cas.1918E 542 (1916).

Finding No. 17 reads:

"That despite having a full opportunity from September 1, 1968 to April 21, 1969, to investigate the facts and circumstances giving rise to this suit and any question concerning coverage, third-party defendant did not in any way communicate with plaintiffs concerning settlement of this suit and in no way advised third-party plaintiffs of its denial of coverage until after plaintiffs' offer of settlement had by its terms expired April 21, 1969."

In attacking Finding No. 17, Allstate relies on: (a) evidence to the effect that a coverage question existed prior to November, 1968, and continued to exist thereafter, and this question had been discussed with Attorney Quintana who represented Gonzales; (b) on evidence that Quintana knew Allstate was not defending the suit against Gonzales; (c) on its assertion that it relied on the representations of Gonzales that he was a resident of the same household with his father; and (d) evidence that plaintiffs' attorneys knew the coverage question had not been resolved when the settlement offer was made.

While these contentions go to justifying Allstate's course of conduct, they do not challenge the finding actually made. The trial court found that Allstate never communicated with plaintiffs' attorneys concerning settlement of the suit. It found that Allstate did not advise Gonzales of its denial of coverage until after the settlement offer had expired. The evidence reviewed at the beginning of this point supports the finding made and is substantial.

The fourth finding attacked is No. 19. It reads:

"That the circumstances aforesaid amounted to bad faith on the part of Allstate Insurance Company in its wrongful disclaim of coverage and its total failure to negotiate, settle, or defend the suit against the third-party plaintiffs, all to their great harm and detriment."

Apart from "bad faith," the facts in Finding No. 19 are covered by the discussion of a duty to defend in the third point of this opinion and by the discussion of Finding No. 17 in the fourth point of the opinion. One additional factual matter raised by Allstate is: "There is no evidence relating to the reasonableness of the offer . . ." to settle. This is a new theory. Allstate's disclaimer was on the basis of no coverage. Assuming "reasonableness" can now be raised, substantial evidence of reasonableness is found in Quintana's several references to the possibility of an excess judgment, the facts of the accident which Allstate obtained from Farmers, and the factual references to damages in the plaintiffs' letter offering settlement.

The main attack upon Finding No. 19 is that an erroneous disclaimer of coverage, a breach of the duty to defend and a failure to attempt a settlement, cannot amount to bad faith under the circumstances of this case.

In answering this contention, we do not consider the disclaimer of coverage to be a separate item. Allstate breached its duty to defend because it considered, erroneously, that there was no coverage. It may be inferred that Allstate made no attempt to settle because it considered there was no coverage. The two items for discussion are the duty to defend and the absence of an attempt to settle. These two items will be discussed in relation to the concept of bad faith. By bad faith we mean an absence of good faith by an insurer in its relations with its insured. Tyler v. Grange Insurance Association, 3 Wash.App. 167, 473 P.2d 193 (1970).

What is good faith? We do not attempt to give a complete definition because of the variety of situations held to involve a question of good faith. See Annot. 40 A.L.R.2d 168, § 10 at 196, § 12 at 205, § 13 at 208, § 14 at 212, § 15 at 214, § 16 at 215 and § 17 at 216 (1955); 14 Couch on Insurance 2d, § 51:10, et seq. (1965). We use the term "good faith" in this case to mean an insurer cannot be partial to its own interests, but must give its interests and the interests of its insured equal consideration. General Accident Fire & Life Assur. Corp. v. Little, 103 Ariz. 435, 443 P.2d 690 (1968); see 40 A.L.R.2d, supra, § 5 at 181.

In considering Allstate's liability for bad faith, we need not decide whether an insurer's duty to proceed in good faith with its insured is an implied covenant in the insurance contract or a tort. See Comunale v. Traders & General Insurance Company, 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883 (1958); Landie v. Century Indemnity Company, supra. We do hold that such a duty exists. Comunale, supra; Landie, supra; 40 A.L.R.2d, supra, § 5 at 181. Also, the duty of good faith is a

concept separate from negligence, see 40 A.L.R.2d, supra, § 7 at 186, and it is a concept separate from fraud, see State Farm Mutual Automobile Ins. Co. v. White, 248 Md. 324, 236 A.2d 269 (1967); American Fidelity & Casualty Co. v. Greyhound Corp., 258 F.2d 709 (5th Cir. 1958).

To fulfill the duty of giving equal consideration to the interests of the insured and the insurer there must be a fair balancing of these interests. American Fidelity & Cas. Co. v. L. C. Jones Trucking Co., 321 P.2d 685 (Okl.1957).

Allstate's duty of good faith in dealing with Gonzales is not of importance in considering liability for breach of the duty to defend. This is so because Allstate is liable for its breach regardless of whether the breach was in good faith. Landie v. Century Indemnity Company, supra; Comunale v. Traders & General Insurance Company, supra.

The question of Allstate's good faith is of importance in connection with Allstate's failure to attempt to settle the claim against Gonzales. If this failure was in bad faith, Allstate may be held liable for the judgment against Gonzales in excess of its policy limits. Foundation Reserve Insurance Company v. Kelly, 388 F.2d 528 (10 Cir. 1968); 14 Couch, supra, § 51:3.

In considering whether Allstate proceeded in good faith in making no attempt to settle the claim against Gonzales, we proceed on the assumption that Allstate did not breach its duty to defend. We make this assumption because if Allstate had performed its contract and defended, Gonzales would have had the right to Allstate's good faith consideration of the settlement offer. Gonzales is entitled to be put in as good a position as he would have been if Allstate had honored its contract and defended. We put Gonzales in this position by assuming that Allstate did not breach its duty to defend. Landie v. Century Indemnity Company, supra; Comunale v. Traders & General Insurance Company, supra.

The decisive question, then, in determining Allstate's liability for the excess judgment, is whether Allstate proceeded in good faith in making no attempt to settle. Comunale, supra.

Allstate contends it proceeded in good faith, claiming it justifiably relied on representations made by Gonzales as to his residency. It relies on four items of evidence. First, on various documents which show the "address" of Gonzales to be a post office box at Tijeras, New Mexico. This post office box is the same "address" as that of the father. Second, on Gonzales' written statement taken by the Farmers' (not Allstate's) adjuster three days after the accident. In this statement Gonzales said he lived with his parents. Third, on the testimony of Allstate's adjuster to the effect that Attorney Quintana, at some unspecified date, told the adjuster that Gonzales lived at Tijeras, New Mexico. Fourth, on the testimony of Allstate's adjuster to the effect that in a telephone conversation on April 14, 1969 (while the settlement offer was open), Gonzales told the adjuster that he lived with his parents at Tijeras, New Mexico.

Under this point, we are not concerned with Gonzales' actual residence. That issue was discussed in the second point of this opinion. The question here is whether Allstate's reliance on this evidence is sufficient to require a ruling that Allstate proceeded in good faith. We hold that it does not because there is conflicting evidence.

Several requests were made for Allstate to adjust or settle the claim because of the possibility of an excess judgment. Attorney Quintana's letter in January, 1969, referred to his "pleas" in this regard. Allstate's witness characterized the reference to "pleas" as ridiculous—not because these pleas had not been made; not because there was no possibility of an excess judgment against Gonzales—but because Quintana's prior letter had been addressed to an Allstate insurance agent and not addressed to the witness. Allstate did not respond to the requests for settlement and never attempted a settlement. Allstate continued to pursue the coverage question after some of the statements were made on which it now says it relied, but it did not deny coverage until after the settlement offer had expired. This evidence raises factual questions as to what consideration Allstate gave to Gonzales' interest.

Considering all of the foregoing evidence, there was a factual issue as to whether Allstate considered Gonzales' interest equally with its own interest. Tyler v. Grange Insurance Association, supra. With this factual issue, we cannot hold, as a matter of law, that the evidence on which Allstate relies justified its failure to take any action in connection with settlement during the time the settlement offer was open, or its dilatory action in disclaiming coverage. On conflicting evidence, the trial court found that Allstate proceeded in bad faith. Substantial evidence supports that finding. The facts distinguish the case from State Farm Mutual Automobile Insurance Co. v. Arnold, 276 F.Supp. 765 (D.S.C.1967) where there was an early and unequivocal denial of coverage. That is not the situation here.

Allstate contends that, as a matter of law, it could not have proceeded in bad faith because all that is involved is a mistake in judgment on its part, and even that mistake was not determined to be a mistake until the issues were tried. See 7A Appleman, Insurance Law and Practice, § 4712 (1962); 8 Blashfield, Automobile Law and Practice, § 343.4 (3rd Ed. 1966). We disagree. Here, the evidence shows a mistake in judgment on Allstate's part in considering its own interests. But also involved is Allstate's almost total disregard for the interest of its insured.

Here, its insured was liable to Lujan; there was a death; information as to the possibility of an excess judgment was furnished to Allstate; its insured requested the case be adjusted or settled. Allstate did not even disclaim coverage until the settlement offer had expired. Under the evidence, good faith was a factual question to be resolved by the trial court. It could properly find, under the

evidence, that Allstate proceeded in bad faith. Potomac Insurance Company v. Wilkins Company, 376 F.2d 425 (10th Cir. 1967) ; Landie v. Century Indemnity Company, supra.

We have limited our review to the evidence at the trial of the issues between Gonzales and Allstate. Subsequent to that trial another offer of settlement was made. Allstate took no action on this second offer before the offer expired, even though at that point the trial court had ruled coverage existed. Gonzales contends these facts also show Allstate's bad faith. Allstate asserts that matters subsequent to trial cannot be considered in this appeal. Having held that evidence at the trial supports the finding of bad faith, we pass this issue. See, however, Foundation Reserve Insurance Company v. Kelly, supra.

### Damages—attorney fees.

After trial of the issues between Gonzales and Allstate, the trial court found that Gonzales was required to employ Attorney Quintana because of Allstate's refusal to defend Gonzales in the wrongful death claim. The trial court's conclusion of law, and judgment, is that Allstate had the duty to pay the fees of Attorney Quintana in representing Gonzales "in this cause of action up to this time."

After trial of the wrongful death action, Attorney Quintana moved for an award of attorney fees. After argument of counsel, but without the presentation of any evidence, judgment was entered awarding $12,000.00 as attorney fees. Allstate contends this was erroneous; we agree.

For the breach of its duty to defend, Allstate ". . . is liable to the insured for the reasonable and necessary expenses which the insured has incurred in conducting the defense. . . ." Annot. 49 A.L.R.2d 694, § 12 at 721 (1956). Thus, Allstate ". . . is liable for reasonable attorneys' fees incurred by the insured in the defense of the action brought against him. . . ." Annot. 49 A.L.R.2d, supra, § 14(b) at 727.

The award of attorney fees was not limited to those incurred in defending the wrongful death action. The judgment was that Allstate was liable for Attorney Quintana's representation "in this cause of action up to this time." This "cause . . up to this time" not only refers to the defense in the wrongful death action up to the point the Gonzales-Allstate issues were tried, it also covers the issues between Gonzales and Allstate raised by the third party complaint and the complaint in intervention. Thus, the judgment of liability for attorney fees encompasses the fees for counsel incurred in suing Allstate to establish that Allstate breached its duty to defend.

Fees for counsel representing the insured in disputes with the insurer are ordinarily not recoverable in the absence of statute or contract. General Acc. F. & L. Assur. Corp. v. Continental Cas. Co., 287 F.2d 464 (9th Cir. 1961) ; Farmers Insurance Exchange v. Henderson, 82 Ariz. 335, 313 P.2d 404 (1957) ; Steel Erection Co. v. Travelers Indemnity Co., 392 S.W.2d 713 (Tex.Civ.App.1965) ; Andrews v. Central Surety Insurance Company, 271 F.Supp. 814 (D.S.C.1967). This approach, in insurance cases, accords with the general New Mexico rule. Riggs v. Gardikas, 78 N.M. 5, 427 P.2d 890 (1967) ; Tabet Lumber Company v. Chalamidas, 83 N.M. 172, 489 P.2d 885 (Ct.App.1971) ; see Lanier v. Securities Acceptance Corporation, 74 N.M. 755, 398 P.2d 980 (1965) ; State ex rel. Roberson v. Board of Education of City of Santa Fe, 70 N.M. 261, 372 P.2d 832 (1962).

Gonzales does not claim that either a statute or a contract authorizes the recovery of attorney fees incurred in his dispute with Allstate. Further, he recognizes the "general rule" of no recovery. His claim is that recovery should be allowed in this case because of overriding considerations of justice and relies on Siegel v. William E. Bookhultz & Sons, Inc., 136 U.S. App.D.C. 138, 419 F.2d 720 (1969). The present case is distinguishable from Siegel, where the insured, a corporation that had

gone out of business, was left in a hapless predicament; both Attorney Quintana and counsel for Farmers defended Gonzales from the inception of the wrongful death action. We hold that the overriding considerations of justice applied in Siegel, supra, are not applicable to this case, and that the "general rule" which denies recovery for fees incurred in the dispute between insurer and insured does apply. Thus, to the extent the award is based on fees for services of Attorney Quintana in Gonzales' dispute with Allstate it is erroneous.

■ The award is erroneous for an additional reason. The attorney fees which may be recovered for breach of the duty to defend are recoverable as an item of damage resulting from the breach. Dinkle v. Denton, 68 N.M. 108, 359 P.2d 345 (1961). This is a matter of proof just as any alleged breach of contract damage is proved. Thus, the award must be based on evidence presented at a hearing at which Allstate has opportunity to question the legal basis of the claim and the reasonableness of the amount claimed. The award in this case was entered without the presentation of evidence, without opportunity to Allstate to question the amount claimed or present evidence in its own behalf.

*Damages—propriety of the amount.*

The jury verdict for the wrongful death was for $175,500.00. Judgment in this amount was entered in favor of Lujan and against Gonzales. In turn, judgment was entered in favor of Gonzales and against Allstate in the same amount, " . . . but diminished by any amounts to be paid by Farmers. . . ." Farmers has paid its policy limit—$30,000.00. Thus, the basic amount with which this point is concerned, apart from any question of interest and attorney fees, is $145,500.00.

Allstate represented to the trial court that its policy limit was $10,000.00. Since Allstate's policy covered Gonzales, its liability for $10,000.00 of the $145,500.00 amount is on the basis of the policy cover-age. Liability for the excess, $135,500.00, is on the basis of Allstate's bad faith. See Landie v. Century Indemnity Company, supra; Comunale v. Traders & General Insurance Company, supra. There is no issue as to this allocation.

Allstate challenges the propriety of the $145,500.00 on three grounds.

■ First, it contends the verdict of $175,500.00 is excessive, not supported by substantial evidence, or based on passion, undue influence or a mistaken measure of damages and, therefore, should be reversed in its entirety. As an alternative to this contention, it asserts a substantial remittitur should be granted. None of these contentions were raised in the trial court and, therefore, were not preserved for review. McCauley v. Ray, 80 N.M. 171, 453 P.2d 192 (1968).

Allstate contends the issue may be raised for the first time on appeal when the judgment appealed from is inherently or fatally defective. It relies on Mitchell v. Allison, 54 N.M. 56, 213 P.2d 231 (1949) which does state that such a defect can be raised for the first time on appeal. We assume this asserted defect comes within the third category stated in DesGeorges v. Grainger, 76 N.M. 52, 412 P.2d 6 (1966); this category is that propositions not raised in the trial court may be determined on appeal when it is necessary to protect the fundamental rights of the party.

There is no fundamental right issue in this case. The amount of the verdict is within the range of evidence. Allstate's claim is largely based on this evidence and most of this evidence was admitted without objection. Other claims of Allstate in support of a "fundamental right" theory are: (1) Lujan did not value the case in an amount as high as the verdict. The answer is that Lujan's valuation was for settlement purposes and that the evidence at trial supports the verdict. (2) A note from the jury asked if it could award an amount larger than the amount asked for in Lujan's complaint. The answer is that the verdict is less than the amount asked for in the

complaint. (3) The trial judge indicated it would be futile for Allstate to attack the verdict and signed the judgment at the time it did so because Allstate would not agree to waive its right to appeal. The answer is that Allstate had several weeks between the verdict and entry of judgment to attack the verdict and did not do so; at the hearing, as a result of which the judgment was entered, argument by counsel was directed to Allstate's liability and not toward the amount of the verdict; the trial court was concerned with its jurisdiction to take further action in connection with Allstate's contention as to liability if it entered judgment in favor of Lujan against Gonzales and an appeal was taken; the judgment now being reviewed was entered at the time to avoid jurisdictional questions. None of the foregoing raises a question as to Allstate's fundamental rights.

Allstate also asserts that the judgment in favor of Gonzales and against Allstate was entered "with no hearing as to Allstate's liability for this excess judgment." The answer is that Allstate's liability was established by the finding that Allstate acted in bad faith toward its insured, Gonzales. This finding was entered after trial of the issues between Gonzales and Allstate. See point four of this opinion. After trial of the wrongful death claim, the trial court, upon motion, added an additional conclusion of law to the decision in the Gonzales-Allstate litigation. This conclusion is that Allstate was liable to Gonzales ". . . for all sums which they [Gonzales] may become legally obligated to pay to plaintiff [Lujan]. . . ." This additional conclusion has not been challenged on appeal.

Allstate seems to contend that an additional hearing should have been held as to the dollar amount of its liability. However, the issue argued at the hearing, after which the additional conclusion and the judgment against Allstate were entered, was whether liability existed, not the amount of the liability. No additional hearing was required on whether Allstate was liable; that issue had previously been tried and ruled against Allstate. The amount of

the damages resulting from its liability for bad faith was the excess judgment against Gonzales. Foundation Reserve Insurance Company v. Kelly, supra.

Allstate's second and third grounds are based on a misunderstanding concerning damages for wrongful death. The second ground concerns testimony as to the value of services performed by decedent, which services were lost by his death. These services consisted of plumbing, carpentry and electrical work, and included the designing and building of furniture and cabinets, and a remodeling of the residence. In placing a monetary value on these services, the witness referred to the "recipients of the services." Upon objection, the witness was questioned further. He identified the recipients as decedent's wife and children.

The objection was that the testimony was impermissible because under our wrongful death statute, see § 22–20–3, N.M. S.A.1953, "[i]t's the pecuniary benefit to the estate and not to any individuals. . . ." Further: ". . . It is a pecuniary value, pecuniary damage, to the estate and the wife and children being the distributees have nothing to do with the question of damages. . . ."

The objection is the reverse of that considered in Stang I [Stang v. Hertz Corporation, 81 N.M. 69, 463 P.2d 45 (Ct.App. 1969)] and Stang II [Stang v. Hertz Corporation, 81 N.M. 348, 467 P.2d 14 (1970)]. In the *Stang* cases, the claim was there could be no recovery for wrongful death if there was no pecuniary injury to the statutory beneficiaries. The *Stang* decisions held that pecuniary injury was not a prerequisite to the recovery of damages for wrongful death; they did not hold that pecuniary injury to the statutory beneficiaries was inadmissible evidence on the question of damages. To the contrary, Stang I, supra, states: "Pecuniary injury to a statutory beneficiary is an element to be considered in awarding damages under § 22–20–3, supra. Its absence (or presence) is to be considered in arriving at the amount of the award. . . . Pecuniary injury to the statutory beneficiary

is proved so that the fact finder may consider this injury in awarding damages for the wrongful death. . . .'

In this case, according to the objection made, the wife and children were distributees of any damage award. They were statutory beneficiaries. Section 22–20–3, supra. Evidence of pecuniary injury to the wife and children was proper.

Allstate next contends, under this second ground, that the testimony of the witness was improperly admitted because the services performed by decedent were not a pecuniary loss because "decedent did not earn this money." The witness placed a monetary value on these services and that value is not contradicted. That monetary value amounts to a pecuniary loss to the recipients because the recipients would have received the benefits of those services except for the death of decedent. Compare Varney v. Taylor, 77 N.M. 28, 419 P.2d 234 (1966). The trial court did not err in admitting the testimony.

The third ground concerns the instruction on damages. Liability of Gonzales to Lujan was admitted. The trial court instructed the jury: "The only issue for you to determine in this case is the amount of damages suffered by the Estate of the decedent, John F. Lujan. . . ." The objection to this instruction was: ". . . It is the pecuniary benefit to the personal representative of the estate and that is the issue in this case." Assuming the word "loss" was meant instead of "benefit," and was so understood by the trial court, the objection is without merit.

While the wrongful death action is brought by the personal representative, § 22–20–3, supra, the personal representative does not share in any damages recovered. He is the trustee for the beneficiaries designated by the statute. See Stang II, supra. No New Mexico decision measures damages on the basis of a pecuniary loss by the personal representative.

Damages for wrongful death are recoverable ". . . by proof of the worth of the life of the decedent ' . ."

and the measure of those damages is ". . . the worth of life of decedent to the estate." Stang II, supra. ". . . Damages for the wrongful death may be recovered by proof of the present worth of life of decedent to the decedent's estate. . . ." Stang I, supra. Pecuniary injury to statutory beneficiaries, Stang I, supra, and net income during probable life, Varney v. Taylor, supra, are no more than evidentiary items admissible in establishing the present worth of life.

The trial court's instruction, quoted above, properly told the jury that the damages to be awarded were those suffered by the decedent's estate. The instruction is incomplete because it does not state a measure for those damages. We do not understand the objection to refer to the absence of the measure of damages from this instruction. Even if it did, the measure of damages was spelled out in another instruction to which no objection was made.

It is not material that the above quoted instruction did not contain all of the aspects of damages to be considered by the jury. The instructions, when read as a whole, fairly presented the damage issue. The trial court did not commit error in giving the quoted instruction. Garcia v. Barber's Super Markets, Inc., 81 N.M. 92, 463 P.2d 516 (Ct.App.1969).

*Damages for dilatory appeal.*

Lujan asserts that Allstate's appeal has been merely for delay, and that the preceding point in this opinion, which is concerned with the propriety of the amount of the award, is frivolous. On this basis, Lujan asks that we assess additional damages against Allstate pursuant to § 21–2–1 (17)(3), N.M.S.A.1953 (Repl.Vol. 4). We are of the opinion that the test set forth in Anderson v. Jenkins Construction Co., 83 N.M. 47, 487 P.2d 1352 (Ct.App.1971) has not been met and decline the request.

The judgment in favor of Lujan is affirmed. The judgment in favor of Gonzales against Allstate for the amount of the Lujan damage award, less amounts paid by Farmers, is affirmed. The judg-

ment against Allstate for attorney fees is reversed and the cause is remanded for trial on the amount of the attorney fees.

It is so ordered.

HENDLEY, J., concurs.

LEWIS R. SUTIN, J. (specially concurring in part and dissenting in part).

SUTIN, Judge (specially concurring in part, and dissenting in part).

A. *The Notice of Appeal was not Sufficient upon Which to Review the Final Judgment of June 9, 1971.*

Two separate judgments were entered in this case: (1) On March 26, 1970, the trial court entered judgment against Allstate on a third party complaint brought by defendant Gonzales. This judgment provided that Allstate had a duty to defend Gonzales in the claim filed by plaintiff for damages, and Allstate also had a duty to pay Gonzales attorney fees for representation up to the date of the judgment. Allstate, thereafter, refused to defend.

(2) On June 9, 1971, the trial court entered judgment in two parts: (a) judgment for plaintiff against Gonzales; (b) judgment by Gonzales over against Allstate for the amount of damages awarded plaintiff, interest, costs, and an additional sum of $12,000 attorney fees for Gonzales' attorney.

On July 6, 1971, the following notice of appeal was filed:

NOTICE IS HEREBY GIVEN, . . . that defendants, *Reynaldo Gonzales Jr.,* and *Allstate Insurance Company* hereby appeals from *the Judgment for the plaintiff against these defendants entered on June 9, 1971* and also appeals from the Judgment entered against Allstate Insurance Company on the Third party Complaint entered March 26, 1970 to the Supreme Court of New Mexico. [Emphasis added].

Gonzales raised the jurisdictional defect that the notice of appeal did not in-

clude 2(b) supra, to wit, that part of the judgment of June 9, 1971, by which Gonzales was awarded judgment over against Allstate. Allstate did not reply to this contention.

Section 21–2–1(5)(5), N.M.S.A.1953 (Repl.Vol. 4) provides in part:

. . . The notice of appeal shall specify the parties taking the appeal and shall *designate the judgment, . . . or part thereof appealed from. . . .* [Emphasis added].

(1) *There was no Notice of Appeal from 2(b) supra.*

It is evident that a judgment may have more than one part. Being jurisdictional, an appellant has a duty to indicate or set apart in the notice whether the appeal is from the entire judgment or a part of it. The notice of appeal, supra, mentions only that part of the judgment for the plaintiff against the defendant Gonzales. It does not mention or refer to that part of the judgment awarded Gonzales over against Allstate. Gonzales was misled.

Why did this mislead Gonzales? (1) Gonzales would never agree to an appeal of a judgment in his own favor. (2) Gonzales never consented that Allstate take this appeal. (3) Allstate was an adversary of Gonzales throughout this lengthy, complicated litigation. (4) The intent to appeal this part of the judgment is totally absent in the notice of appeal. (5) Upon what basis Allstate claimed to be attorney for Gonzales on this appeal is a secret.

Since notice of appeal was not given, that part of the judgment which awards Gonzales judgment over against Allstate, including the additional sum of $12,000 attorney fees must be affirmed. Mabry v. Mobil Oil Corporation, (Ct.App. March 31, 1972); see Hayes v. Hagemeier, 75 N.M. 70, 400 P.2d 945 (1963).

I dissent from that part of the majority opinion which remands the cause for trial on the amount of the attorney fees awarded Gonzales' attorney.

### (2) *Allstate had no Right to Appeal 2(a) supra.*

This court has a duty to determine whether it has jurisdiction of an appeal. Hayes v. Hagemeier, supra.

Allstate, *as attorney for Gonzales,* filed the joint notice of appeal for Gonzales and Allstate. The notice states it "appeals from the judgment *for the plaintiff against these defendants.*" Allstate was not a defendant. There was no judgment for the plaintiff against Gonzales and Allstate. The judgment for plaintiff was against Gonzales only. Since Allstate refused to defend Gonzales, and did not appear in the hearing before the jury, and never represented Gonzales, it had no right to appeal on Gonzales' behalf.

On the morning of June 9, 1971, the day judgment was entered Allstate appeared in court for a hearing on motions filed by Gonzales' attorney.

During the argument, Allstate said: "Well, I think the judgment on the verdict should be entered. Whether or not there's an appeal from that, I don't know, I don't have anything to do with that."

The court: "I know you don't."

It is obvious that Allstate had nothing to do with verdict of plaintiff against Gonzales.

On June 11, 1971, two days after judgment was entered, Allstate entered its appearance as third party defendant and plaintiff in intervention. On July 6, 1971, Allstate entered its appearance *on behalf of Gonzales* in association with attorneys who represented Allstate in the preceding trial in which judgment was entered March 26, 1970. The record does not show any authority of Allstate to represent Gonzales on this appeal. Gonzales had his own attorney.

I find nothing which makes Allstate an aggrieved party under Rule 5 [§ 21–2–1(5)(1), N.M.S.A.1953 (Repl.Vol. 4)] with the right to appeal the judgment of plaintiff against Gonzales. It did not "have a personal or pecuniary interest **or property** right adversely affected by **the judgment in** question." Home Fire and Marine Insurance Company v. Pan American Petroleum Corporation, 72 N.M. 163, 381 P.2d 675 (1963). It was not aggrieved or prejudiced by a matter in which it did not participate, Ruidoso State Bank v. Brumlow, 81 N.M. 379, 467 P.2d 395 (1970), and refused to participate.

Since the notice of appeal was not sufficient to grant a review, this court lacks jurisdiction to hear the appeal as to the judgment of June 9, 1971.

### B. *The Judgment of March 26, 1970, Must be Affirmed for Failure of Allstate to Defend Under a Reservation of Rights.*

Allstate issued to Gonzales an "Allstate Crusader Policy." The introduction states that it was designed to give the policy holder "the broadest auto insurance protection in history." A design of this kind when scratched in operation is one of the elements which direct states to seek "No-Fault Insurance." Allstate agreed to "defend any lawsuit, even if groundless, false or fraudulent, against any insured for such damages which are payable under the terms of this policy, but may make such settlement of any claim or suit as it deems expedient." It intentionally refused to conform to this provision.

New Mexico has not yet adopted a rule on the duty of the insurer to defend. A rule should be formulated for the protection of both the insured and the insurer. Courts in this country have made "a fortress out of a dictionary" in arriving at different rules. Annot. 50 A.L.R.2d 458, and later case service entitled, "Allegations in Third Person's Action against Insured as determining liability insurer's duty to defend."

The horrendous litigation of automobile accident cases and related insurance cases demands that uniform rules of law be established in the United States. Insurance companies will have guidelines to follow. Victims and insureds will be protected. It is a useless gesture to try and study nationwide opinions, law review articles, legal

publications and magazines. None of us on courts of review can solve this problem alone.

I feel free in a concurring opinion to suggest a rule for New Mexico for insurance companies to defend and to settle.

### (1) *Rule on Duty to Defend.*

Allstate agreed to "defend *any* lawsuit, even if *groundless.*" It must defend any claim for relief filed against an insured in automobile accidents even though (1) the complaint fails to state a claim covered by the policy; (2) there is doubt as to the obligation of the insurer to defend; (3) questions of coverage arise; (4) the insurance is primary or secondary. To protect itself from the bar of waiver or estoppel in a subsequent action on the policy, it may clearly disclaim liability under the policy and give notice to the insured of its reservation of a right to set up the defense of noncoverage. Henry v. Johnson, 191 Kan. 369, 381 P.2d 538 (1963); Pendlebury v. Western Casualty and Surety Company, 89 Idaho 456, 406 P.2d 129 (1965); State Farm Mutual Automobile Insurance Company v. Foundation Reserve Insurance Company, Inc., 78 N.M. 359, 431 P.2d 737 (1967). Compare Pendleton v. Pan American Fire and Casualty Company, 317 F.2d 96 (10th Cir. 1963), 326 F.2d 760 (1964); Albuquerque Gravel Products Co. v. American Employers Insurance Company, 282 F.2d 218 (10th Cir. 1960). Both are cases arising in New Mexico.

If such a rule is adopted, the calamity which occurred in this case due to the utter reckless disregard by Allstate of its duties, would probably have been avoided.

Based upon this rule, Allstate violated its duty to defend. It is immaterial whether the judgment of March 26, 1970, was correct. Based upon this fact, the Lujan-Gonzales judgment should be affirmed without discussion of alleged error claimed by Allstate on the March 26, 1970, judgment.

### (2) *Rule on Duty to Settle Potential Excess Judgment.*

Allstate agreed that it "may make such settlement of any claim or suit as it deems expedient." This language is inapplicable since Allstate refused to recognize the claim or defend the suit.

Allstate refused to accept plaintiff's offer to settle within policy limits. Good faith or bad faith, negligence or due care are irrelevant. Allstate preferred to gamble liability for an excess judgment.

We are involved in a suit where the insurer refused to defend and refused to settle. Time does not allow a reading of the welter of cases on the subject to find such a case. My view is that an insurer which refuses to defend or settle within policy limits is strictly liable for any resulting judgment. The public policy involved, the reasons for strict liability, the benefits and detriments involved, the fairness and justice of this rule are set forth in the following cases, law review articles, and authorities cited: Crisci v. Security Insurance Company of New Haven, Conn., 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967); Lysick v. Walcom, 258 Cal.App. 2d 136, 65 Cal.Rptr. 406 (1968); see Dumas v. State Farm Mutual Automobile Insurance Company, 111 N.H. 43, 274 A.2d 781 (1971); Tyler v. Grange Insurance Association, 3 Wash.App. 167, 473 P.2d 193 (1970); Snow, Excess Liability—Crisci and Lysick, 36 Ins. Counsel J. 51 (Jan.1969); Gallagher, The Problems of Defense Counsel Negotiating Settlement in cases involving a potential excess judgment, 37 Ins. Counsel J. 506 (Oct.1970); Pressley, Insurance; Strict Liability for Insurance Companies in Excess Judgment suits, 23 U. of Fla.L.R. 201 (1970); 43 N.Y.U.L.Rev. 199, Insurance-Excess Recovery, Liability Insurer who refused settlement within the policy limits held liable for excess recovery and mental damages, Annot. 40 A.L.R.2d 168 and Later Case Service, Duty of Liability Insurer to settle or compromise.

We now seek a rule in New Mexico. We should follow the trend of the times. The

courts recognize that the distinction between negligence and bad faith in insurance settlement cases is most difficult to trace. Courts have difficulty in defining "bad faith," and some courts have applied both standards. Dumas, supra; Brown v. United States Fidelity & Guaranty Co., 314 F.2d 675 (2nd Cir. 1963).

In cases which involve a refusal to defend and settle, we should not make a "fortress out of a dictionary." We should state a clear, unequivocal rule which gives adequate notice to the insurer and the insured.

I specially concur with the results of the majority opinion, except that I dissent for the remand for trial on the amount of the attorney fees awarded Gonzales' attorney.